IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | |
|---|---|
| WILFRED GIBSON doing business as GIBSON LANDSCAPE MANAGEMENT COMPANY )<br><br>Plaintiff, )<br><br>vs. )<br><br>HOUSING AUTHORITY OF THE CITY OF ATLANTA, GEORGIA, a body politic, )<br><br>Defendant ) | CIVIL ACTION FILE<br>NO:_____ |

**COMPLAINT FOR INJUNCTIVE AND OTHER RELIEF**

COMES NOW, Plaintiff Wilfred Gibson doing business as Gibson Landscape Management Company ("Gibson Landscape") files this Complaint and states as follows:

1.

This is a suit in equity authorized and instituted pursuant to 42 U.S.C. § 1981 et seq. Jurisdiction of this Court is invoked pursuant to 42 U.S.C § 1981; 42 U.S.C. § 1983; 28 U.S.C. § 1331; and 28 U.S.C. § 1343(4). The jurisdiction of this Court is invoked to secure protection of and to redress deprivation of rights secured by 42. U.S.C. §1981 providing relief against racial discrimination in contracting.

2.

Plaintiff is a sole proprietorship operating in the state of Georgia and residing in Fulton County.

3.

Defendant Atlanta Housing Authority composes a body politic known as The Housing Authority of the City of Atlanta, Georgia (hereinafter "AHA") and transact business on behalf of the individual citizens of the City of Atlanta, Georgia as a political subdivision and agency. The individual directors are subject to the jurisdiction of this court and may be served as follows.

4.

The Executive Director Rene Glover may be served with a copy of this Complaint at 230 John Wesley Dobbs Avenue, NE, Atlanta, Fulton County, Georgia 30303-2421.

**FACTS**

5.

Gibson Landscape Management Company is a contractor that provides landscape maintenance services to entities, including government agencies, of various kinds and descriptions.

6.

The headquarters of Gibson Landscape is located in Atlanta, Fulton County, Georgia.

7.

Gibson has been engaged as a contractor since 1993 and has provided landscape maintenance services to a variety of companies since that time, including services for the Atlanta Housing Authority.

8.

Gibson Landscape is solely owned by an African-American male and qualifies as a disadvantaged business enterprise under the U.S. Small Business Administration guidelines.

9.

Gibson Landscape has performed landscape maintenance services on AHA projects since 1993 and has contracted with various prime contractors of the AHA.

10.

Currently, Gibson Landscape does not have any active AHA projects directly with the AHA or any prime contractors of the AHA.

11.

Unfortunately, Gibson Landscape has not been treated fairly in accordance with federal law.

12.

The AHA contracts with Private Management Companies ("PMCO") under the auspices of federal regulations. Companies such as The Habitat Company, LLC ("Habitat"), Lane Management Company, LLC ("Lane"), and IMS Management Services, LLC ("IMS") secured project management contracts with the AHA in or about June 2003 for a three-year term, with renewable options in or about June 2006.

13.

As a part of these contracts, these PMCO's are responsible for all aspects of managing multi-family housing complexes owned and operated by the AHA.

14.

Each PMCO has managed a wide variety of AHA properties.

15.

As a part of their management services, each PMCO was responsible for the overall upkeep of the properties including any necessary maintenance and improvements to the properties as permitted by AHA.

16.

As a part of their agreements with AHA, the PMCO's subcontracted various services to be provided at each property to various contractors of different skills and abilities.

17.

As a part of their contracts with the AHA, the AHA required compliance with its Contracts and Procurement Policy Statement as revised and amended in 1998, 2003 and 2005.

18.

Specifically, the AHA's procurement policy required each management company to secure bids for any purchases exceeding $25,000 and to engage in an open and deliberate process to find the best and feasible bidder.

19.

In addition, the AHA's procurement policy also stipulated that each management company should pursue any necessary efforts to ensure that minority and women owned companies were provided an opportunity to submit bids for various services at each property.

20.

As a part of these efforts, the management company was responsible for maintaining a list of potential minority and women owned vendors.

21.

Over the years, Gibson Landscape requested and secured placement on the vendor lists of each management company.

22.

Gibson Landscape secured contracts with each of the management companies to provide landscape maintenance at several properties within each management company's purview.

23.

As a subcontractor to IMS, Gibson Landscape contracted for the following projects by providing landscape services on the dates indicated:

| Property | Date of Contract | Termination Date |
|---|---|---|
| Gilbert Gardens | January 1, 2002 | March 1, 2004 |
| John O. Chiles | January 1, 2001 | February 1, 2005 |
| Englewood Manor | February 1, 2002 | March 31, 2004 |

24.

As a subcontractor to Habitat, Gibson Landscape contracted for the following projects by providing landscape services on the dates indicated:

| Property | Date of Contract | Termination Date |
|---|---|---|
| Bankhead Courts | July 1, 2003 | March 31, 2004 |
| Marietta Road | July 1, 2003 | March 31, 2004 |

25.

As a subcontractor to Lane, Gibson Landscape contracted for the following projects by providing landscape services on the dates indicated:

| Property | Date of Contract | Termination Date |
|---|---|---|
| Bankhead Court | January 1, 2000 | June 1, 2003 |
| Harris Homes Apartment | April 1, 1996 | May 1, 2000 |
| Marietta High Rise | January 1, 2000 | June 31, 2003 |
| McDaniel Glen | July 1, 2003 | June 31, 2006 |

26.

Gibson Landscape has been engaged in providing landscape services of various sizes and descriptions to public agencies and private companies since 1993.

27.

Unfortunately, these management companies did not adhere to the policies established by the AHA and those required by federal law.

28.

In particular, Gibson Landscape suffered the following discriminatory acts with each management company.

29.

In Gibson Landscape's relationship with IMS, Gibson encountered the following treatment:

| Relevant Dates | Contract No./Issue | Description of Discriminatory Acts |
|---|---|---|
| February 27, 2004 | Contract No. 2003-0016003 Capital Improvement/Landscape Services | Denial of opportunity to submit bid at projects involving Thomasville Heights and Englewood Manor |
| February 9, 2004 | Contract No. 2004-419018-3, Landscape Maintenance | Denial of opportunity to submit bids despite being on vendor list for IMS for projects at Palmer House, Roosevelt Homes, Grady Homes, Antoine Graves and University Homes |
| January 24, 2005 | Landscape maintenance work | Denial of opportunity to submit bid for such work at John O. Chiles Apartment |

30.

The bid opportunities sought by Gibson Landscape were given to a contractor other than an African-American contractor.

31.

Despite being on the vendor lists, Gibson Landscape was not offered an opportunity to submit a bid.

32.

The denial of these opportunities caused harm and damages to Gibson Landscape.

33.

In Gibson Landscape's relationship with Habitat, Gibson encountered the following treatment:

| Relevant Dates | Contract No./Issue | Description of Discriminatory Acts |
|---|---|---|
| April 1, 2004 | Landscape maintenance work | Denial of bid opportunity at Bankhead Court and Marietta Heights |
| May 1, 2005 | Landscape maintenance work | Denial of re-bid opportunities at Bankhead Courts, Herndon Homes, Hightower Manor, Barge Residences, Marietta Residence, and Hollywood Court |
| Capital Improvement Landscape | Landscape maintenance work | Denial of bid opportunities to submit bid for landscape |

|  |  | maintenance work |

34.

The bid opportunities sought by Gibson Landscape were awarded to a contractor other than an African-American contractor.

35.

Despite being on the vendor lists, Gibson Landscape was not offered an opportunity to submit a bid.

36.

The denial of these opportunities caused harm and damages to Gibson Landscape.

37.

In Gibson Landscape's relationship with Lane, Gibson encountered the following treatment:

| Relevant Dates | Contract No./Issue | Description of Discriminatory Acts |
| --- | --- | --- |
| February 27, 2004 | Contract No. 2003-0016001 Landscape/site improvements | Denial of bid opportunities at projects involving McDaniel Glen Annex, U Resue Villas and Cosby Spear |
| May 1, 2005 | Landscape maintenance and site improvements | Denial of bid opportunities at projects involving MLK Homes, Jonesboro South/North and Leila Valley |

| August 1, 2005 | RFQ05-004/IFB-5-009 | Bid was not publicly opened. |

38.

The bid opportunities sought by Gibson Landscape were given to a contractor other than an African-American contractor.

39.

Despite being on the vendor lists, Gibson Landscape was not offered an opportunity to submit a bid.

40.

The denial of these opportunities caused harm and damages to Gibson Landscape.

41.

These acts caused substantial harm to Gibson Landscape and forced Gibson Landscape to take legal action in the form of this lawsuit.

42.

In particular, 24 CFR § 85.36 governs how PMCO's are supposed to award contracts for AHA projects when federal monies are involved.

43.

PMCO's are required to use sound business practices in the procurement of contracts involving federal funds.

44.

On separate occasions in 2004 and 2005, Gibson was told that PMCO's under the auspices of the AHA did not have to follow 24 CFR § 85.36.

45.

Thus, the PMCO's were free to procure subcontracts for AHA projects without the necessity of more formal bid processes prescribed under 24 CFR § 85.36.

46.

Please find attached as Exhibit "A" a letter from Lane Management Company dated August 30, 2005. In this letter, Lane denies that it has to comply with 24 CFR § 85.36.

47.

However, the attached advice memorandum (Exhibit "B") dated June 20, 2007 from the U.S. Department of Housing & Urban Development clearly indicates that PMCO's are required to adhere to 24 CFR § 85.36.

48.

Gibson has undertaken substantial efforts to address these issues including a Congressional inquiry by his former Congressman and an investigation by the U.S. Department of HUD, without clear answers.

## COUNT I.

## INJUNCTIVE RELIEF

49.

Plaintiff realleges Paragraphs 1 through 48 as though fully restated in this Count.

50.

AHA engaged in procurement practices that violated federal law and the procurement regulations of 24 CFR§ 85.36.

51.

AHA was advised repeatedly about compliance with federal procurement regulations and ensuring that PMCO's also complied with such regulations by the U.S. Department of Housing and Urban Development.

52.

Despite such warnings, AHA ignored such warnings and sought to execute bid processes without firm commitment and regard for federal procurement regulations over a period of ten (10) years from 2000 through the date of this suit.

53.

These actions had a detrimental effect on Plaintiff by denying Plaintiff opportunities to pursue bids and contracts with PMCO's.

54.

Plaintiff exhausted all efforts to secure relief including a congressional inquiry, request for investigation by the Inspector General, request for investigation with the U.S. Department of Housing and Urban Development without any success or result.

55.

Given the lack of relief received by Plaintiff, Plaintiff asks this court for injunctive relief in the following form:

- Make a determination of the applicability of 24 CFR §85.36 to AHA and similar public housing agencies;

- Make a determination of the applicability of 24 CFR § 85.36 to the private management companies of the AHA and similar public housing agencies; and

- If the court determines that 24 CFR § 85.36 applies to the AHA and its private management companies, award Plaintiff the sum of $25 million for any injuries caused by AHA's failure to adhere to federal law and in particular 24 CFR § 85.36.

## COUNT II
## RACIAL DISCRIMINATION

## 42 U.S.C. SECTION 1981 & 1983

56.

The allegations contained in Paragraphs 1 through 50 of this Complaint are hereby incorporated by reference in this Count as though fully set forth herein.

57.

42 U.S.C. § 1981 forbids unlawful discrimination in contracting.

58.

42 U.S.C. § 1983 forbids a municipal agency from engaging in unlawful discrimination as a part of its custom and policy.

59.

Defendant AHA engaged in unlawful discrimination as part of its custom and policy by failing to enforce established federal procurement regulations and monitoring the private management companies for potential discriminatory actions.

60.

PMCO's IMS, Lane and Habitat engaged in unlawful discrimination by denying opportunities to Gibson to participate in contract work and failing to follow stated and established procurement regulations designed to afford opportunities to all persons regardless of race.

61.

As a direct and proximate result of these actions, Gibson Landscape has suffered great and irreparable economic and other loss. Gibson Landscape has been damaged by the Defendants' actions and is entitled to compensatory, punitive and other damages in an amount to be proven at trial.

62.

Gibson Landscape seeks all damages including attorney's fees, court costs and all other damages as allowed for violations of Section 1981.

63.

Gibson Landscape further seeks injunctive and equitable relief and asks the court to:

- Determine whether PMCO's are required to comply with the terms of 24 C.F.R. Section 8536 in procurement of services under their contracts with Defendant AHA.

- Strictly enforce the procurement regulations of AHA by requiring full adherence to such regulations and monitoring compliance thereto; and

- Any and all other relief the court deems necessary.

**COUNT III**

**MISREPRESENTATION**

64.

The allegations contained in Paragraphs 1 through 49 of this Complaint are hereby incorporated by reference in this Count as though fully set forth herein.

65.

Defendant made material misrepresentation of the fact that Gibson Landscape would be judged on the basis of merit and ability, and that Gibson Landscape would be given an opportunity to compete for opportunities and projects with regards to the management contracts issued by the AHA.

66.

Defendant concealed facts from Gibson Landscape that Defendant had an affirmative duty to disclose to the effect that Defendants would not provide Gibson Landscape an opportunity to bid on various work procured under the management contracts.

67.

Defendant held themselves out as being situated so that Gibson Landscape would reasonably rely on Defendant. Defendant made the material misrepresentations and concealed facts with the knowledge of the falsity of the representations made, with the

intent to induce Gibson Landscape to rely on such representations. As a consequence, Gibson Landscape reasonably relied on the fraudulent and material misrepresentations.

68.

As a result of Defendant's fraud, deceit and misrepresentations as set forth above, Gibson Landscape has suffered and will suffer damages in excess of the jurisdictional requirements of this Court.

69.

Defendant's fraudulent actions towards Gibson Landscape were willful and intentional, and were made with the intent to injure Gibson Landscape and therefore Gibson Landscape is entitled to punitive damages.

**WHEREFORE,** Plaintiff Wilfred Gibson doing business as Gibson Landscape Management Company prays that he receives the following relief:

- A. Trial by jury;
- B. Injunctive relief requested in Count I and damages of $25 million for Defendant's failure to comply with federal procurement regulations;
- C. Judgment for Plaintiff and against Defendant on Count II for Section 1981 race discrimination in an amount to be proven at trial;
- D. Judgment for Plaintiff and against Defendant on Count III for misrepresentation in an amount to be proven at trial;
- E. Any and all damages allowable by law for each count including actual damages, general, compensatory, exemplary, and punitive;
- F. Costs of suit;
- G. Reasonable attorney's fees; and
- H. Such other and further relief as the Court may deem just and equitable.

Respectfully submitted, this 6th day of July 2011.

*/s/ James E. Rambeau*
James E. Rambeau, Jr.
Georgia Bar No. 592845
The Rambeau Law Group, PC
6045 Atlantic Blvd.
Norcross, GA 30071
(770) 239-7417
Fax: (770) 662-1561

**Counsel for Plaintiff Wilfred Gibson d/b/a Gibson Landscape Management Company**

## VERIFICATION

I, WILFRED GIBSON, affirm, certify, and state that the information contained in this Complaint is true and accurate to the best of their knowledge. Further, I state that I am submitting this verification to the Court under penalties of perjury.

FURTHER AFFIANT SAYETH NOT.

Sworn to and subscribed before me this 6th day of July 2011.

_____  _____
NOTARY PUBLIC                     WILFRED GIBSON

My Commission Expires:

**JAMES EDWARD RAMBEAU, JR**
**GWINNETT COUNTY, GEORGIA**
**NOTARY PUBLIC**
**MY COMMISSION EXPIRES**
**JANUARY 17, 2012**

4

## ACKNOWLEDGEMENT

I, <u>WILFRED GIBSON</u>, have been informed by James E. Rambeau, Esq. of The Rambeau Law Group, PC that there is a distinct possibility of Mr. Rambeau securing a position in another organization out of state. Mr. Rambeau has further informed me that he will notify me of his intentions on or before August 21, 2011. In the event Mr. Rambeau informs me of his decision to close his practice by the deadline date, I acknowledge that I will be responsible for substituting new legal counsel in my case and that Mr. Rambeau can not represent me in any capacity. Finally, I state that I am submitting this Acknowledgement to the Court for its uses with any request for withdrawal submitted by Mr. Rambeau.

FURTHER AFFIANT SAYETH NOT.

Sworn to and subscribed before me this _____ day of July 2011.

_____        _____
NOTARY PUBLIC                                   WILFRED GIBSON

My Commission Expires:

JAMES EDWARD RAMBEAU, JR
GWINNETT COUNTY, GEORGIA
NOTARY PUBLIC
MY COMMISSION EXPIRES
JANUARY 17, 2012